146 So.2d 303

**Leo E. BASHINSKY et al.**

**v.**

**Guy SPARKS, Commissioner of Revenue.**

**3 Div. 7.**

Supreme Court of Alabama.

Oct. 25, 1962.

Spain, Gillon & Young and John W. Gillon, Birmingham, for appellants.

MacDonald Gallion, Atty. Gen., and Herbert I. Burson, Jr., Asst. Atty. Gen., for appellee.

' SIMPSON, Justice.

This is an appeal from the Circuit Court of Montgomery County from a final decree on a petition in the nature of mandamus in favor of the respondent Guy Sparks as Commissioner of Revenue of Alabama. The Bashinskys seek a reversal of the decision of the lower court, and issuance of a writ in the nature of mandamus to the Commissioner of Revenue requiring that he certify a refund of taxes and interest accrued. Code 1940, Tit. 51, § 410. All necessary administrative and procedural steps were taken by the petitioners. The question before us is purely one of law. It arises from these facts.

Leo Bashinsky was president and majority stockholder of Magic City Foods, Incorporated, an Alabama corporation, from 1946 until February, 1956, during which time the company prospered and grew. After expressing a desire to retire, the petitioner agreed to allow the corporation to redeem his shares at $250.00 per share. Magic City did in fact redeem the stock and the stock of another, having a sufficient earned surplus, and followed the statutory procedure amending the charter decreasing the amount of outstanding stock from 1,850 to 455 shares, 954 of which belonged to appellants. Over the redemption transaction this dispute arises. The commissioner contends that the transaction was in fact a sale, and that the gain realized by the petitioner was taxable. The petitioner urges that the transaction was either a dividend from a domestic corporation, or a partial liquidating dividend, in either event tax free, under § 388, Tit. 51, Code of Ala. 1940, as amended. See our recent case of Buchanan v. State of Alabama, post, p. 592, 150 So.2d 200, holding that a complete liquidation of the corporation and distribution of the corporate assets to its stockholders is exempt from taxation under said § 388.

There is no doubt that the corporation was to continue its operations, after resignation of the petitioner. This was thought necessary to preserve the efficient organization of the company. The basis of the 954 shares which were redeemed was $95,400.00 in June, 1946; the amount received by the petitioner for the shares on February 20, 1956 was $238,500.00; the commissioner contends that the net gain of $143,100.00 was taxable as the transaction was in fact a sale. The lower court agreed. We believe that this was error, as we will attempt to show.

Section 403, Tit. 51, Code of Ala.1940, subsection (g), defines partial liquidation:

"(g) Definition of partial liquidation. As used in this section the term 'amounts distributed in partial liquida-

tion' means a distribution by a corporation in complete cancellation or redemption of a *part* of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." (Emphasis supplied.)

The language of this section is clear and unambiguous, needing no resort to rules of construction to determine the meaning and intent of the Legislature. It is manifest that there may be two types of partial liquidations: (1) where the corporation completely cancels part of its stock, and (2) where the corporation cancels all or part of its stock in a series of redemptions. We think that the cancellation of petitioner's stock falls into type (1), where the corporation cancels completely "part" of its stock. There was a bona fide decrease in the capital stock of Magic City, and petitioner withdrew completely from the company.

Section 403, Tit. 51, Code of Ala. 1940, subsection (a) declares the definition of a dividend:

"(a) Definition of dividend. The term 'dividend' when used in this title means any distribution made by a corporation to its shareholders whether in money or in other property, out of its earnings or profits accumulated after December 31, 1932."

The language here is broad and comprehensive, covering "any distribution made by a corporation to its shareholders". Construing the definition here with that of a "partial liquidation" in (g) as we must do, the conclusion is inescapable that the terms both have application to certain situations, and are not mutually exclusive. A partial liquidation as defined in (g) must of necessity be a "dividend" to the extent that it is not a return of capital invested, because it is a "distribution by a corporation", and in order to cancel or redeem that distribution must be made to a shareholder. Thus we arrive at the term "partial liquidating dividend", which we hold the trans-

action in the case at bar to be. It must also be noticed that the definition is not restricted to this particular section, but to the contrary, encompasses "this title", which of necessity must be considered whenever the term "dividend" is found in Title 51.

The treatment to be accorded distributions in liquidation is found in § 403, supra, subsection (c), which provides in part:

" * * * and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock."

The amount received by a taxpayer which exceeded the full payment for the stock would have to be considered a dividend; otherwise the various sections of the statute could not be reconciled and the intent of the Legislature would be subverted.

Section 388, Tit. 51, Code of Ala.1940, was amended in 1947 to read as follows:

"§ 388. Exemptions.—The following exemptions from income taxation shall be allowed to every individual resident taxpayer: Dividends received on stocks of domestic corporations, *including liquidating dividends paid from income of domestic corporations on which the corporation distributing such dividends has paid all income taxes due the state of Alabama in the current or prior tax years.*" (Amendment emphasized.)

It should be noted that § 403, supra, was left unchanged by the Legislature, when § 388 was amended as above. (General Acts of 1947, p. 254). It is undisputed that Magic City has paid all its income taxes to the State of Alabama. In amending § 388 the Legislature could have limited the exemption to include only dividends in complete liquidation, but did not so choose, instead leaving the language in so broad a form as to cover both complete or partial liquidation.

We are aware that exemptions from taxation are to be construed in favor of the

taxing authority, and against the taxpayer. State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726; Touart v. American Cyanamid Co., 250 Ala. 551, 35 So.2d 484; State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824; Carter Oil Co. v. Blair, 256 Ala. 650, 57 So.2d 64.

But it has consistently been observed that this court will indulge no strained construction to give effect to such rule where a fair interpretation of legislative intent may lead to a contrary interpretation. We have said that arbitrary rules of construction are of little value when the real intent of the legislature can be gathered from the act itself. State v. Dawson, 264 Ala. 647; 89 So.2d 103; State v. Taylor, 262 Ala. 639, 80 So. 2d 618; Hattemer v. State Tax Commission, 235 Ala. 44, 177 So. 156; Holt v. Long, 234 Ala. 369, 174 So. 759; State v. Calumet & Hecla Consol. Copper Co., supra; Crow v. General Cable Corp., 223 Ala. 611, 137 So. 657.

Section 403, supra, so far as instantly concerned, was borrowed and adopted from § 115 of the Federal Income Tax Act of 1928, except for the section number references and dates, 26 U.S.C.A., Internal Revenue Acts 1924 to date, p. 384 et seq. The construction placed upon the Federal Statute by the Federal Judiciary is highly persuasive authority, State v. Flenner, 236 Ala. 228, 181 So. 736; State v. Fuqua, 258 Ala. 288, 61 So.2d 810; State v. Yellow Pine Lumber Co., 263 Ala. 613, 83 So.2d 317; unless there appears something in the act as anacted to show a contrary purpose, State v. Robinson Land & Lumber Co. of Ala., 262 Ala. 146, 77 So.2d 641, and State v. Flenner, supra; the rule is of course not absolute or controlling, but merely persuasive. The federal decisions on the question before us are scant, but, probably, the reason is that the law is somewhat settled on this question. The cases seem to dwell on distinguishing between "dividends" and "partial liquidations" as they are treated differently for purposes of Federal income taxation. We have discovered no case where in a similar transaction the court treated it as a sale; nor have we been cited to one by appellee. See Brown v. C. I. R., 3 Cir., 79 F.2d 73; Williams v. C. I. R., 28 B.T.A. 1279; and for cases holding a distribution to be a partial liquidation, see Augustus Trask Ashton v. C. I. R., 39 B.T.A. 888; Lockhart v. C. I. R., 8 T.C. 436. The distinction made in the federal cases is not so important here, as dividends and liquidating dividends under our statute are expressly declared to be exempt, § 388, supra. We can ascertain though whether or not the federal courts treat such a transaction as a "sale". It is clear that they do not under analogous facts. Amelia H. Cohen Trust v. C. I. R., 3 Cir., 121 F.2d 689; Diamond Alkali Co. v. Driscoll, 3 Cir., 125 F.2d 1005; Gravois Planing Mill v. C. I. R., 8 Cir., 299 F.2d 199. Taking the words in their plain meaning, and from the common usage, the statutes are clear. Such a transaction is not a sale and should not bear the tax burdens of a sale. Under the decisions above cited, we think that the transaction in the case at bar would be held by the federal courts to be a dividend, or a partial liquidation. In either event in our jurisdiction it would be exempt, § 388, supra.

Uniformity between state tax laws and federal tax laws is most desirable. We have attempted to achieve such a uniformity here. We see no need in adding to the growing complexity existing in the tax field, and we are convinced our holding is sound.

The public policy of the Legislature in exempting dividends paid by a domestic corporation would seem to be to avoid double taxation. Without expressing an opinion on whether this is double taxation, we think the intent of the Legislature is clear, and has been unchanged except by a broadening of the concept with the 1947 amendment exempting liquidating dividends. (General Acts 1947, pp. 254, 255.) Appellee's contentions appear to be contrary to the expressed intent of the Legislature.

We conclude that the trial court was in error in holding that the transaction was a

sale of stock. The writ in the nature of mandamus should issue to the Commissioner.

Reversed and remanded with directions.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.